

# Missouri Court of Appeals
## Southern District

In Division

CYNTHIA HELMIG,                          )
                                         )
    Appellant,                          )  No. SD38181
                                         )
v.                                       )  **Filed:  May 10, 2024**
                                         )
SPRINGFIELD R-12 SCHOOL DISTRICT,  )
                                         )
    Respondent.                         )

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

## AFFIRMED IN PART, VACATED IN PART AND REMANDED

Cynthia Helmig ("Claimant") appeals from a final award issued by the Labor and Industrial Relations Commission ("the Commission") in a workers' compensation case, modifying the decision of the Administrative Law Judge ("ALJ").[1]  In its final award, the Commission modified the award of the ALJ by:  (1) finding that Springfield R-12 School District ("Employer") (rather than Claimant) has the right to select the health care providers for Claimant's future medical care; (2) by ordering Employer to resolve Claimant's past medical bills with the providers directly or by issuing payment to

---

[1] All statutory references are to RSMo 2000 as supplemented through October 2010, the alleged date of Claimant's work injuries, unless otherwise indicated.

Claimant; (3) by ordering Employer to hold Claimant harmless for past medical expenses, rather than simply ordering Employer to pay those expenses to Claimant; and (4) by removing $152,935.67 in past medical expenses from the scope of the 25% attorney's fee granted to Claimant's counsel. Claimant raises seven points on appeal.

In point 1, Claimant argues the Commission misapplied the law when it modified the ALJ's award and ruled Employer had a right to select future medical providers because Employer waived its right to select future medical providers. Points 2-7 argue the Commission acted in excess of its powers when it modified the ALJ's award by: (1) allowing Employer to resolve Claimant's past medical expenses with the providers directly ("the direct payment finding") or to pay Claimant directly; and (2) ordering Employer to hold Claimant harmless ("the hold harmless finding") from liability to her medical providers because: the Commission was bound by the parties' stipulations of contested issues, under 8 CSR 50-2.010(14), to decide only contested issues (points 2, 3); the Commission does not have authority to review non-appealed issues, under 8 CSR 20-3.030 (points 4, 5); and it denied Claimant and her attorneys due process of law (points 6, 7). Finding no merit in the first point, that aspect of the final award is affirmed. Finding merit in points 6 and 7, and because that error affected the Commission's decision with respect to the rulings challenged in points 2-7, we vacate those aspects of the final award and remand for further proceedings consistent with this opinion.

**Factual and Procedural Background**

Claimant works for Employer as a counselor at an elementary school. During October 2010, Claimant was injured on two separate occasions arising out of and in the scope of her employment. During the first incident, a kindergarten student jumped

2

from a chair onto Claimant's shoulders and neck. During the second incident, Claimant stubbed her foot in a dip in a parking lot while chasing a runaway student and tripped. Following the incidents, Claimant completed an incident report and requested medical treatment.

Employer authorized Claimant's medical treatment and referred Claimant to Dr. Scott Galligos, who treated Claimant until she was discharged from treatment in February 2011. Following discharge, Claimant was still experiencing pain and symptoms, so she called Dr. Galligos' office to schedule an appointment. Dr. Galligos' office told Claimant she would need to contact Employer because she had been discharged from treatment. Claimant contacted Employer and requested additional treatment, but Employer denied Claimant's request for further treatment because Dr. Galligos had discharged her.

Because Claimant was still experiencing symptoms, Claimant sought additional medical treatment using her health insurance. She was eventually referred to Dr. Robert Thompson who diagnosed Claimant with thoracic outlet syndrome, "a relatively rare condition [that] is often overlooked . . . by physicians and specialists who may not be familiar or experienced with this problem." Claimant received surgery for that condition, and has had continuing therapy to manage pain and to maintain her mobility and functioning.

In October of 2012, Claimant filed a workers' compensation claim related to her injuries. The parties stipulated that Claimant's injuries arose out of and were in the course of her employment, that Claimant notified Employer of her injuries as required, that the claim was timely filed, and that Employer had provided medical treatment to

Claimant in the amounts of $3,355.69, for one injury, and $3,650.25, for a second injury. The parties further agreed the following disputed issues needed to be decided:

> (1) Whether the employer and insurer are obligated to pay for certain past medical care and expenses in the amount of $184,957.24.
>      . . . .
>
> (4) Whether the employee has sustained injuries that will require additional or future medical care in order to cure and relieve the employee from the effects of the injuries.

A hearing was held, where Claimant and her husband testified, and thousands of pages of medical records were admitted into evidence. "All three physicians who submitted complete medical reports or testified, . . . agreed that the past medical treatment was reasonably necessary to cure or relieve [Claimant's] conditions." Two of those physicians recommended continuing treatment, while one did not.

The ALJ found Claimant was entitled to unpaid medical expenses in the amount of $152,935.67 as well as future medical treatment. In support of its ruling on past medical expenses, the ALJ found:

> [Claimant] made a prima facie case for the payment of the expenses when she testified the treatment was due to her injuries, she described the treatment, and the treatment records and bills were admitted into evidence. *Martin v. Mid-America Farm Lines*, 769 S.W.2d 111 (Mo. banc 1989). The Supreme Court later held that the amount which can be recovered consists of medical expenses paid by third-party payors (such as health insurance companies), amounts paid by the patient, and pending balances. . . . Further, [Employer] had full opportunity to provide treatment but declined to do so. An employer who refuses to provide treatment when provided the opportunity to do so is then liable for the costs of medical treatment of work-related injuries. *Stephens v. Crane Trucking, Inc.*, 446 S.W.2d 772, 779-782 (Mo. 1969)[;] *Wiedower v. ACF Industries, Inc.*, 657 S.W.3d 71, 74 (Mo. App. E.D. 1983). When an employer denies liability, it then denies medical treatment as a benefit. *Wiedower*, supra; *Beatty v. Chandeysson Electric Co.*,190 S.W.2d 648, 656 (Mo. App. 1945). This rule also applies in more recent cases. *Dierks v. Kraft Foods*, 471 S.W.3d 726, 735, 736 (Mo. App. S.D. 2015); *Martin v. Town & Country Supermarkets*, 220 S.W.3d 836, 844 (Mo. App. S.D. 2007). It cannot be said that [Claimant] selected her medical providers as

an independent choice. "If the employee desires, he shall have the right to select his own physician, surgeon, or other such requirement at his own expense." Section 287.140.1. However, [Claimant] did not "select" one provider over another. [Employer] gave her no choice. And, the definition of "select" is "v.tr. choose, esp. as the best or most suitable. adj. 1 chosen for excellence or suitability; choice. 2 (of a society, etc.) exclusive; cautious in admitting members." The Oxford American Dictionary of Current English, p. 730 (Oxford University Press 1999). The plain meaning of the word cannot be construed to mean that [Claimant] has "selected" medical providers over the past 11 years.

As to future medical treatment, the ALJ designated Claimant's medical providers as the authorized treating physicians:

> These physicians have been treating [Claimant] for over five years at the least and eight years at most. It would be inappropriate to designate different physicians to commence treatment. Section 287.140.2. In addition, there is no evidence to believe that [Employer] even offers a choice of treatment even now, since it apparently takes the position that no further treatment is necessary. It has not offered, by any qualified physician, a choice in treatment. This is not to say that this choice would be appropriate, given the qualifications and continuing evaluations of Dr. Thompson and the interventional anesthesiologists in St. Louis and Springfield who have treated [Claimant].

Finally, Claimant's law firm was "allowed a fee of 25 percent of all sums awarded under the provisions of this award for necessary legal services rendered to [Claimant]" and "shall constitute a lien" on the award.

Employer timely filed an application for review with the Commission. The application alleged, among other things, that the ALJ erred in not allowing Employer to direct future medical care, if appropriately awarded, and that the ALJ erred in awarding Claimant past medical by considering in error the opinion of two medical experts. Claimant filed a response to the application for review. Both parties filed briefs articulating their positions before the Commission.

Following submission of the case to the Commission, the Commission modified the award and decision of the ALJ and adopted the ALJ's findings, conclusions, decision

5

and award to the extent they were not inconsistent with the Commission's

modifications. Relevant to the issues raised in this appeal, the Commission concluded:

> *Past Medical Treatment*
> We affirm the ALJ's finding that [Claimant] incurred fair, reasonable, and customary charges in the amount of $152,935.67 for medical treatment she sought on her own after [Employer] stopped authorizing treatment for her work injuries. We hold [Employer] responsible for the medical bills detailed on pages 12 and 13 of the ALJ's award. *We modify the ALJ's award to the extent that it requires [Employer] to pay this amount directly to [Claimant]. Instead, we order [Employer] to resolve these bills with the providers directly or issue payment for these expenses to [Claimant].*
>
> *Future Medical*
> We affirm the ALJ's finding that [Employer] is liable to provide and pay for future medical treatment reasonably required to cure or relieve the effects of [Claimant]'s injury, including the neurogenic thoracic outlet syndrome and its complications, and cervical and lumbar strains.
>
> *We disagree with the ALJ's implicit finding that [Employer]'s refusal to authorize medical treatment in the past justifies mandating that future treatment may only be provided by or at the direction of physicians [Claimant] has previously self-selected.* Pursuant to § 287.140.1 RSMo, [Employer] has the right to select the licensed treating physician, surgeon, chiropractic physician, or other health care provider; provided, however, that such physicians, surgeons or other health care providers shall offer only those services authorized within the scope of their licenses.
>
> If a disagreement arises regarding the parties' respective rights and obligations with regard to future medical treatment, we note that the Commission retains jurisdiction over such disputes. See *State ex rel. ISP Minerals, Inc., v. Labor & Indus. Rels. Comm'n*, 465 S.W.3d 471 (Mo. 2015) and 8 CSR 20-3.010(6).
>
> . . . .
>
> [Employer] is responsible and *shall hold [Claimant] harmless for past medical expenses* associated with [Claimant]'s treatment related to her October 12, 2010 compensable work injury in the amount of $152,935.67. This award, exclusive of past medical expenses, is subject to a lien in favor of Neal and Newman, LLP, in the amount of 25% for necessary legal services rendered.

(Emphasis added.)

6

## Standard of Review

We review the Commission's final award to determine if it is "supported by competent and substantial evidence upon the whole record."  Mo. Const. art. V, § 18.  On appeal, this Court may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award; [or]

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

§ 287.495.1; *Annayeva v. SAB of TSD of City of St. Louis*, 597 S.W.3d 196, 198 (Mo. banc 2020).  We review the findings of the Commission, not those of the ALJ. *Kent v. NHC Healthcare*, 621 S.W.3d 596, 607 (Mo. App. E.D. 2021).  However, to the extent the Commission affirmed and adopted the findings and conclusions of the ALJ, we review the ALJ's findings and conclusions.  *Sell v. Ozarks Med. Ctr.*, 333 S.W.3d 498, 505 (Mo. App. S.D. 2011).  While we defer to the Commission on issues of fact, we apply *de novo* review to questions of law.  *Poole v. City of St. Louis*, 328 S.W.3d 277, 288 (Mo. App. E.D. 2010).  Finally, we strictly construe the provisions of the workers' compensation statutes.  *Cosby v. Treasurer of State*, 579 S.W.3d 202, 206 (Mo. banc 2019).

> Strict construction means that a statute can be given no broader application than is warranted by its plain and unambiguous terms.  The operation of the statute must be confined to matters affirmatively pointed out by its terms, and to cases which fall fairly within its letter.  A strict construction of a statute presumes nothing that is not expressed.

*Linkous v. Kirkwood Sch. Dist.*, 626 S.W.3d 889, 894 (Mo. App. E.D. 2021) (quoting *State ex rel. KCP & L Greater Mo. Operations Co. v. Cook*, 353 S.W.3d 14, 20 (Mo. App. W.D. 2011)). Accordingly, "[s]trict construction does not authorize an ALJ, the Commission, or this [C]ourt to add words to or subtract words from a statute or ignore the plain meaning of the words chosen by the legislature."[2] *Naeter v. Treasurer of Mo.*, 576 S.W.3d 233, 237 (Mo. App. E.D. 2019).

**Point 1: Employer's Right to Select Future Medical Providers**

Claimant argues the Commission erred in modifying the ALJ's award by ruling Employer had the right to select Claimant's future medical providers. According to Claimant, Employer waived this right by refusing to provide Claimant with medical treatment for 12 years. This argument fails because section 287.140 says nothing about an employer waiving its right to select medical providers. To the contrary, it states an employer *shall* have the right to select the medical provider:

> 1. . . . [T]he employee shall receive and the employer shall provide such medical, surgical, chiropractic, and hospital treatment, including nursing, custodial, ambulance and medicines, as may reasonably be required after the injury or disability, to cure and relieve from the effects of the injury. If the employee desires, he shall have the right to select his own physician, surgeon, or other such requirement at his own expense.
>
> . . . . [and]
>
> 10. The employer *shall* have the right to select the licensed treating physician, surgeon, chiropractic physician, or other health care provider; provided, however, that such physicians, surgeons or other health care

---

[2] In 2005, the legislature amended section 287.800 to require strict construction of the workers' compensation law. *Peters v. Wady Indus., Inc.*, 489 S.W.3d 784, 792 n.6 (Mo. banc 2016). Prior to that amendment, workers' compensation statutes were liberally construed. Unlike strict construction, "[l]iberal construction requires a broad interpretation of the workers' compensation laws such that benefits are extended to the largest possible class, and any doubts as to the right of compensation are resolved in favor of the employee." *Eason v. Treasurer of State*, 371 S.W.3d 886, 890 (Mo. App. W.D. 2012).

providers shall offer only those services authorized within the scope of their licenses.

§ 287.140 (emphasis added).

Thus, "[t]he clear and unambiguous language of section 287.140 charges an employer with the duty of providing an injured employee with needed medical care but gives the employer control over the selection of a medical provider." *Pace v. City of St. Joseph*, 458 S.W.3d 870, 873 (Mo. App. W.D. 2015). While an employer that fails to provide treatment after being notified of a claimant's injuries is liable for the cost of the treatment provided by the claimant's providers, *Meyers v. Wildcat Materials, Inc.*, 258 S.W.3d 77, 82 (Mo. App. S.D. 2008), there is no language in the statute that waives the employer's right to direct future treatment, and neither the Commission nor this Court is at liberty to read such language into the statute.[3] After all, "strict

---

3 The closest this Court has come to addressing whether, under section 287.140.10, an employer waives his right to direct future medical care by failing to provide past care is *Pace*, 458 S.W.3d at 870. In that case, the Commission found the claimant's past medical care was reasonably necessary to cure and relieve the claimant of his injuries and that the employer had notice of the injuries, refused to provide medical treatment, and was responsible for the claimant's past medical bills. *Id.* at 872. It further ordered that employer was directed to authorize and furnish future medical care to claimant. *Id.* After a dispute arose between the parties over who had the right to select the medical providers for the claimant's future treatment, the claimant filed a declaratory judgment action arguing the employer had waived the right to select treatment. *Id.* The trial court granted the employer's motion for summary judgment and determined the employer was authorized to select the medical providers for the claimant's future care. *Id.* The western district of our Court agreed:

> Section 287.140.10 provides, "The employer shall have the right to select the licensed treating physician, surgeon, chiropractic physician, or other health care provider." The clear and unambiguous language of section 287.140 charges an employer with the duty of providing an injured employee with needed medical care but gives the employer control over the selection of a medical provider. Therefore, under the clear and unambiguous language of the Commission's award, the City has a duty to provide future medical treatment for Mr. Pace and has the right to select the treating providers.

*Pace*, 458 S.W.3d at 873. While *Pace* ultimately decided which party had a right to direct future medical care based on the language in the Commission's order, it relied on section 287.140's clear and unambiguous language in reaching its decision. We agree with the Court in *Pace* that the language of section 287.140.10 is clear: an employer *shall* have the right to select the medical provider.

construction of a statute presumes *nothing* that is not expressed."[4]  *Cosby*, 579 S.W.3d

at 207 n.4 (quoting *Templemire v. W & M Welding, Inc.*, 433 S.W.3d 371, 381 (Mo.

banc 2014)) (emphasis added).

Nor are we persuaded by the authority Claimant relies on.  Claimant directs us to

*Balsamo v. Fisher Body Div.-General Motors Corp.*, 481 S.W.2d 536 (Mo. App.

St.L.D. 1972), and *Schuster v. State Div. of Emp't Sec.*, 972 S.W.2d 377 (Mo. App.

E.D. 1998), in support of her argument that an employer who fails to provide past

medical treatment waives its right to select the providers for future treatment.  In

*Balsamo*, the Commission found the employer had waived its right to select the

claimant's nursing care based on the employer's failure to provide nursing care to the

claimant in the past.  481 S.W.2d at 538-39.  The St. Louis District of our Court, in an

analysis that did not address the language of section 287.140.10, reasoned:

> [W]e see no valid basis on which to uphold the employer's wish to require
> the employee to discontinue the nursing care he has chosen, and accept
> whatever is belatedly provided by the employer.  Since the employer has
> been aware of the employee's need for at least some nursing care since
> 1967, and has heretofore not offered to provide it, we conclude that he has
> waived his right under the statute.

*Balsamo*, 481 S.W.2d at 539.

*Schuster* involved the same issue.  There, the employer appealed the

Commission's award of future nursing services, arguing it violated employer's right to

select the health care provider.  972 S.W.2d at 381.  On appeal, the Eastern District

found:

> Viewing the evidence in the light most favorable to the final award of the
> Commission, we find the reasoning of *Balsamo* particularly applicable to
> this case.  While it is undisputed that Employer did provide nursing care to

---

[4] There may be good policy reasons why a failure to provide past medical treatment waives an employer's
right to direct future medical treatment, but it is the role of our legislative branch, not this Court, to
determine that policy.

10

Claimant for more than one year after his injury, Employer stopped providing care after February 10, 1993 even though Claimant was still in need of continual care. Employer's failure to provide basic nursing care despite Claimant's obvious need is grounds for waiver of its rights under section 287.140.10. Although conflicting evidence exists with respect to this issue, the Commission ruled in favor of Claimant. The Commission's decision is supported by competent and substantial evidence which is not clearly contrary to the overwhelming weight of the evidence. We therefore affirm the Commission's award of future nursing services.

*Schuster*, 972 S.W.2d at 385.

Neither *Schuster* nor *Balsamo* are helpful to our analysis. For starters, both of those cases are relics of an era where liberal construction of the workers' compensation law was applied, and they involved challenges to the Commission's award in favor of the claimant and not the employer. In those cases, unlike here, the Commission's final award found in favor of the claimant on the right to select future medical providers. But even if the procedural posture of those cases was similar to the case before us, *Schuster* and *Balsamo* are bereft of any analysis addressing the language of section 287.140, which clearly and unambiguously gives the employer the right to select the medical provider.

The law is clear that when an employer fails to provide medical treatment, the employee may pick his or her own provider and assess the costs against the employer. But section 287.140 says *nothing* about the employer waiving its right to select future medical providers, and we are not at liberty to add words to a statute or to ignore the plain meaning of the words chosen by the legislature. *See Naeter*, 576 S.W.3d at 237. Because the statute contains no language waiving an employer's right to direct future

medical treatment, the Commission did not err in determining Employer has the right to direct future medical care.[5]  Point 1 is denied.

### Points 6 and 7:  Due Process Arguments

In points 6 and 7, Claimant argues that she and her counsel were denied statutory due process because the Commission made modifications to parts of the ALJ's award that were not challenged in Employer's application for review.  In point 7, Claimant specifically argues that this denial of due process resulted in modifications to the award, without notice and an opportunity for Claimant to be heard, that failed to securely protect the payment of medical expenses and deprived Claimant's counsel of payment for services provided.  We agree.

The Commission has adopted a rule regulating the review of an award by an ALJ in 8 CSR 20-3.030.  In relevant part, subsection (1) of this regulation states that:

> [a]ny interested party in a contested case may appeal from a final award, order, or decision made by an administrative law judge of the Division of Workers' Compensation by making an application for review within twenty (20) days from the date of the award, order, or decision with the commission as provided by section 287.480, RSMo.

8 CSR 20-3.030(1).  In relevant part, subsection (3)(A) states:

> An application for review of any final award, order, or decision of the [ALJ] shall state specifically the reason the applicant believes the findings and conclusions of the [ALJ] on the controlling issues are not properly supported.  It shall not be sufficient merely to state that the decision of the [ALJ] on any particular issue is not supported by competent and substantial evidence.  *The allegations of error in an application for review are not an opportunity for early briefing, but rather serve to*

---

[5] Claimant goes to extensive lengths explaining why Claimant cannot, as a matter of law, be found to have "selected" her own provider for past medical care, because she had no choice when Employer refused to provide care.  We agree.  But that argument is only relevant in determining whether Employer is *liable* for past medical expenses.  It has no bearing on whether Employer waived its statutory right to direct future medical treatment.  Additionally, Claimant argues the Commission failed to enter sufficient findings of fact on the issue of Employer's waiver of the right to select future medical providers.  We reject this argument, because a strict construction of section 287.140.10, does not allow the ALJ, Commission, or this Court to insert language waiving an employer's right to direct medical treatment into the statute.

12

*notify the commission and opposing parties of the nature of the issues that will be addressed on appeal.*

8 CSR 20-3.030(3)(A) (emphasis added). The Employer's application for review did not challenge either the direct payment of all the monetary awards to Claimant or the grant of a 25% attorney's fee and lien covering all of that monetary relief. There is nothing in the record to show that the Commission gave Claimant and her counsel appropriate notice and an opportunity to be heard on either of these issues during the modification process.

In **Stonecipher v. Poplar Bluff R1 Sch. Dist.**, 205 S.W.3d 326, 328 (Mo. App. S.D. 2006), the Commission vacated a non-appealed PTD award. On appeal, this Court reversed the Commission's ruling for the following reason:

> But even if 8 CSR 20-3.030(3)(A) and its developed case law did not preclude the Commission from vacating the non-appealed PTD award—an issue we do not yet decide—the Commission exceeded its power in doing so without affording Claimant appropriate notice and opportunity to be heard. We note again that section 287.480 directs the Commission to make and file awards "in like manner as specified in section 287.470," and section 287.470 in turn requires "due notice to the parties interested."
> . . . .
>
> [W]e reverse that part of the Commission's Final Award setting aside the ALJ's findings regarding Claimant's permanent total disability and Fund's liability therefor, and remand this case to the Commission for further proceedings not inconsistent herewith. We do not require the Commission to once again consider the non-appealed PTD issues, but if it determines to do so, it should give Claimant appropriate notice and opportunity to be heard.

**Stonecipher**, 205 S.W.3d at 332-34. We reaffirmed this principle in **Nolan v. Degussa Admixtures, Inc.**, 246 S.W.3d 1, 5 (Mo. App. S.D. 2008), by remanding the case back to the Commission to determine whether it vacated a cost award without giving an affected party appropriate notice and an opportunity to be heard. We applied the same principle again in **Anhalt v. Penmac Pers. Servs., Inc.**, 505 S.W.3d 842

13

(Mo. App. S.D. 2016), noting that the Commission cannot consider non-appealed matters without appropriate notice and an opportunity to be heard, and remanding for further proceedings. *Id*. The eastern district of this Court also applied this principle in *Mell v. Biebel Bros., Inc.*, 247 S.W.3d 26 (Mo. App. E.D. 2008). Citing *Stonecipher*, the Eastern District held that the Commission denied the employer its right to due process when it decided the non-appealed issue of future medical benefits without first providing notice to the parties and an opportunity to be heard. *Mell*, 247 S.W.3d at 31-32.

Here, the Commission exceeded its powers and denied Claimant and her attorney statutory due process by modifying the ALJ's award with respect to the $152,935.67 in past medical expenses, and by removing those expenses from the scope of the 25% attorney's fee, without giving Claimant or her attorney appropriate notice and an opportunity to be heard on those issues. Finding merit in points 6 and 7, and because that error affected the Commission's decision with respect to the rulings challenged in points 2-7, we vacate those aspects of the final award and remand for further proceedings consistent with this opinion.

Just as in *Stonecipher*, we recognize that the Commission may, on remand, decide not to pursue the challenged modifications. *See Stonecipher*, 205 S.W.3d at 333-34. All we are holding is that, if the Commission does decide to do so, it must give Claimant and her attorney appropriate notice and an opportunity to be heard as to each non-appealed issue the Commission wants to examine.

### Conclusion

We vacate the portions of the Commission's final award that: (1) permitted Employer to resolve Claimant's past medical bills directly with the providers; (2)

14

ordered Employer to hold Claimant harmless for past medical expenses, rather than simply ordering Employer to pay those expenses to Claimant; and (3) removed $152,935.67 in past medical expenses from the scope of the 25% attorney's lien granted to Claimant's counsel.  In all other respects, the Commission's final award is affirmed.

MARY W. SHEFFIELD, J. – OPINION AUTHOR

JACK A. L. GOODMAN, C.J. – CONCURS

JEFFREY W. BATES, J. – CONCURS